### In re REVCO D.S., INC., et al., Debtors.

**Bankruptcy Nos. 588–1308 to 588–1321, 588–1305, 588–1761 to 588–1812 and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

Oct. 24, 1988.

See also, 91 B.R. 777.

John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, Myron Trepper, Levin & Weintraub & Crames, New York City, for debtors.

Stuart E. Hertzberg, I. William Cohen, Hertzberg, Jacob & Weingarten, Detroit, Mich., Harry W. Greenfield, Javitch & Eisen Co., L.P.A., Cleveland, Ohio, for Trade Creditors' Committee.

Conrad Morgenstern, Cleveland, Ohio, U.S. Trustee.

Edward I. Gold, Daniel J. Casamatta, Attys., Office of U.S. Trustee, Cleveland, Ohio.

Brad Eric Sheler, Madlyn Gleich, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Joseph F. Hutchinson, Jr., Brouse & McDowell, Akron, Ohio, for Unofficial Committee of Secured Bank Lenders.

Edward A.C. Sutherland, Weil, Gotshal & Manges, New York City, for D.S. Partners, L.P.

## FINDINGS OF FACT AND DISCUSSION OF LAW REGARDING MOTION TO APPOINT EXAMINER AND APPLICATION FOR RETENTION OF TOUCHE ROSS & CO.

HAROLD F. WHITE, Bankruptcy Judge.

This matter came before this Court on October 11, 1988 for a hearing upon the Motion to Appoint an Examiner filed by the United States Trustee on September 23, 1988, and the Application for Retention of Touche Ross & Co. as Consultants and Accountants for the Trade Creditors' Committee for Specific Purposes, filed October 3, 1988.

Among the parties appearing at the hearing were: John Silas Hopkins, III and Myron Trepper, counsel for the Debtors; Conrad J. Morgenstern, the United States Trustee, Edward I. Gold and Daniel J. Casamatta, of the U.S. Trustee's office; I. William Cohen and Harry W. Greenfield, counsel for the Trade Creditors' Committee; Brad Eric Sheler and Madlyn Gleich, counsel for the Noteholders' Committee; Joseph F. Hutchinson, Jr., counsel for the Bank Group, and Edward A.C. Sutherland, counsel for D.S. Partners, L.P.

The Motion to Appoint an Examiner (Motion) was opposed by the Trade Creditors' Committee (Committee) and the Debtors and the Debtors In Possession (Debtors). The Application for Retention of Touche Ross & Co. (Application) was opposed by the United States Trustee (UST).

## BACKGROUND

The UST has submitted his Motion pursuant to 11 U.S.C. sec. 1104(b)(2). He asserts that an examiner should be appointed to investigate the circumstances surrounding the leveraged buy-out and issuance of debentures by the Debtors in connection therewith.

On October 3, 1988 the Committee filed an "Application for Retention of Touche Ross & Co. as Consultants and Accountants for the Trade Creditors' Committee for Specific Purposes." In said Application the Committee acknowledges that it has retained the accounting firm of Ernst & Whinney jointly with the Unsecured Noteholders' Committee, but states it desires to employ Touche Ross & Co. (Touche Ross) on matters it determines ".. there is or may be a divergence or adversity of interest between it and the Committee of Unsecured Bondholders." (Application, page 1) The Application states the first matter Touche Ross will be required to perform is an investigation of the leveraged buy-out. (Application, page 2)

As the UST's Motion and the Committee's Application both relate to the issue of whether the Court should authorize appointment of a professional to investigate the leveraged buy-out, the Court combined the pleadings for purposes of the hearing and will address both pleadings in these Findings.

The UST asserts that appointment of an examiner is mandatory pursuant to Section 1104(b)(2) because debtor, Revco D.S., Inc. owed fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, in excess of $5,000,000 at the time Debtors filed their voluntary petitions and remains so indebted.

The Committee filed a response in opposition to the Motion and a memorandum of law in support. In its response and memorandum the Committee asserts that the appointment of an examiner in this case is neither mandatory nor in the best interests of the parties in interest in this case.

The Committee states that it is entitled to investigate the leveraged buy-out and requests the Court to authorize retention of Touche Ross for the purpose of performing said investigation. The Committee further asserts that if the Court orders the appointment of an examiner it requests that the Court determine that the Committee may also investigate the leveraged buy-out. The Committee submits that there is no case law holding that the appointment of an examiner is mandatory when the debt requirement of 11 U.S.C. sec. 1104(b)(2) has been met, and further argues that since the equity holders and unsecured creditors are already represented by committees, legal counsel and accountants, an examiner is not necessary and "... would only be an expensive, superfluous, redundancy with no benefit to the Debtors, the trade creditors, the secured creditors or the noteholders." (Committee's memorandum, p. 4)

Debtors also filed a response to the UST's Motion. Debtors assert that the word "shall" in 11 U.S.C. sec. 1104(b)(2) does not mandate appointment of an examiner in cases when the debt requirement of Section 1104(b)(2) has been met. Debtors argue that the Committee, with its counsel and accountants, possesses a full range of investigatory powers under 11 U.S.C. sec. 1103 with the requisite ability to use them effectively, and therefore appointment of an examiner would result in duplication of services and unnecessary additional fees and expenses incurred by the Debtors' estate.

Upon the presentations of counsel the Court hereby makes the following Findings of Fact.

## FINDINGS OF FACT

1. On July 28, 1988 each of the Debtors, including Anac Holding Corporation (Holding), Revco D.S., Inc. and substantially all of the operating subsidiaries of Revco D.S., Inc., filed with the Court 14 separate chapter 11 petitions pursuant to Section 301 of the Bankruptcy Code. Debtors also filed a separate chapter 11 proceeding on July 26, 1988. On July 28, 1988 this Court ordered joint administration of Debtors' cases pursuant to Bankruptcy Rule 1015. The Debt-

ors were thereupon continued in the management and operation of their businesses and properties as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

2. On October 4 and 5, 1988 Debtors filed an additional 53 chapter 11 proceedings. An order was entered on October 5, 1988 by this Court providing joint administration for procedural purposes of the 53 cases with the cases being jointly administered by the Court as Revco D.S., Inc., et al, Case No. 588–1308.

3. This Court has jurisdiction hereof pursuant to Section 1334(a) of the Judicial Code, 28 U.S.C. sec. 1334(a) and order of reference being General Order No. 84 of the U.S. District Court, Northern District of Ohio. Venue is proper in this judicial district pursuant to Section 1409(a) of the Judicial Code, 28 U.S.C. sec. 1409(a). This is a core proceeding pursuant to 28 U.S.C. sec. 157(b)(2)(A).

4. Holding is a Delaware corporation formed in 1986 to affect the merger and acquisition of Revco D.S., Inc., a predecessor corporation of Revco (Predecessor Corporation). Effective December 29, 1986 a wholly-owned acquisition subsidiary of Holding acquired directly or indirectly through subsidiaries, by means of a merger, all of the outstanding publicly-held common stock of the Predecessor Corporation in a leveraged buy-out. On December 30, 1986 the Predecessor Corporation was merged with and into the acquisition subsidiary of Holding, with the acquisition subsidiary becoming the surviving corporation and thereupon changing its name to Revco D.S., Inc. As a result of the merger transaction, Revco is a wholly-owned subsidiary of Holding.

5. The Debtors are engaged in the operation of approximately 2,000 retail drug stores throughout the United States. The Debtors employ approximately 28,000 people.

6. The Motion was filed by the UST on September 23, 1988 and originally scheduled for hearing on September 27, 1988. Subsequently, the hearing was adjourned by order of this Court until October 11, 1988 and notice of said hearing was mailed by the Court on September 27, 1988 to all parties per Administrative Order No. 1 of this Court.

7. The Court finds that the UST is a party in interest pursuant to Bankruptcy Rule X–1009(a).

8. The Application was originally scheduled for hearing by this Court on October 25, 1988 and notice of said hearing date was made pursuant to Administrative Order No. 1. Counsel for the Committee requested the hearing be rescheduled for October 11, 1988. Counsel for the Committee was responsible for notification of the rescheduled date. Counsel did not file a copy of the hearing notice with the Court until October 7, 1988 and the proof of service of the notice was not filed until October 12, 1988, one day after the hearing.

9. Debtors and the UST filed a stipulation of fact that only debtor, Revco D.S., Inc., owed fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, in excess of $5,000,000 at the time Debtors filed their voluntary petitions on July 28, 1988, and remains so indebted at present.

10. The Committee, on October 3, 1988, filed an Application for the Retention of Touche Ross and Co., a nationally known accounting firm, for the specific purpose of investigating the leveraged buy-out. In its Application the Committee requests the appointment be made nunc pro tunc to August 22, 1988. The Court had not authorized the retention of Touche Ross as accountants for the Committee as of the date of the hearing.

11. The Court finds that the UST wants the appointment of an examiner for the sole purpose of investigating the leveraged buy-out and agreed that the appointment of the examiner would, at this time, be for the limited purpose of investigating the leveraged buy-out with a right to request the Court at a later date to expand the duties for cause shown. It was generally agreed by all parties present that an investigation of the leveraged buy-out is necessary in the scheme of reorganization of the Debtors.

12. The court finds that the Securities and Exchange Commission, a party in interest, was notified of the Motion of the UST for appointment of an examiner, failed to respond to the said Motion or appear at the hearing.

13. The Court entered an Order approving employment of Arthur Andersen & Co. as accountants for Debtors on August 10, 1988. Arthur Andersen & Co. was retained as certified public accountants to perform the accounting, auditing, appraisal and tax services for Debtors. On September 19, 1988 this court entered an Order approving the employment of Peat Marwick Main & Co. as special accountants for the Debtors. Peat Marwick Main & Co. was retained for the purpose of reissuing its opinions with respect to the audited financial statements of the Debtors and their Predecessor Corporations for the fiscal year ended May 30, 1987, and for such other prior periods as may be required in connection with any filings to be made with the Securities and Exchange Commission.

14. The Court finds that on joint motion made by the Committee and the Committee for Unsecured Noteholders, Ernst & Whinney, a nationally known certified public accounting firm, was retained by general retainer for the purpose of representing both committees with the specific purpose to determine whether claims may exist against third parties.

15. The joint motion for authority to employ Ernst & Whinney as accountants for the committees describes the professional services to be rendered as follows:

a. Ernst & Whinney will prepare reports regarding the Debtors, which will require the review of relevant books and records and existing accounting systems and procedures.

b. Ernst & Whinney will consult with the committees, the committees' counsel, Debtors' management and counsel regarding whether claims exist against third parties.

c. The committees agreed that with respect to any matter as to which the committees may have a conflict or divergence of interests including but not limited to the leveraged buy-out, the Noteholders' Committee "... shall have the sole and exclusive benefit of Ernst & Whinney's professional services with respect thereto", and the Trade Creditors' Committee "(i) shall not be entitled to consult with or receive any work product of and from Ernst & Whinney with respect to such conflict or divergence of interests and (ii) shall be entitled to retain other certified public accountants pursuant to order of this Court to render professional services to the Trade Creditors' Committee with respect to such conflict or divergence of interests." (Joint motion, p. 5)

16. While the joint motion and the Committee's argument in support of retaining Touche Ross refer to possible conflicts which may arise between the committees during the work performed by Ernst & Whinney, no evidence of any conflict was presented to the Court at the hearing on October 11, 1988.

17. The Debtors have continued in the operation and management of their business as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

18. The Committee and the Unsecured Noteholders' Committee have retained separate legal counsel and have jointly retained Ernst & Whinney as accountants. Counsel for the Committee admitted that Ernst & Whinney would be investigating the leveraged buy-out; however, there was the possibility of a conflict between the Committee and the Unsecured Noteholders' Committee; that it wanted a separate investigation to be conducted by Touche Ross should this divergence of interest arise; however, this appears to be in conflict with the Application for Retention of Touche Ross as the Application requests the order authorizing retention be entered nunc pro tunc as of August 22, 1988.

19. The Court further finds that the meeting of creditors as provided for under 11 U.S.C. sec. 341 has not been held and is scheduled to be held on October 27, 1988. No trustee has been appointed in the cases to date. The Court has not previously ap-

pointed an examiner nor considered such a motion.

20. The Court further finds that as of October 11, 1988, the day of the hearing, the Debtors have not filed their schedules of assets and liabilities as required by Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007(b).

21. There was no evidence presented to the Court as required under 11 U.S.C. sec. 1104(b)(1) that an investigation of the Debtors is appropriate at this time. The UST admitted there is no evidence of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the Debtors by the current management or the prior management, and the only basis of said Motion is 11 U.S.C. sec. 1104(b)(2).

22. The Court finds that the Committee, the Debtors and the UST could not agree upon the appointment of a professional to be an examiner and all insisted that they be authorized to appoint separate firms or persons to investigate the leveraged buy-out.

## ISSUE

IS IT MANDATORY UPON THE COURT TO APPOINT AN EXAMINER PURSUANT TO 11 U.S.C. SEC. 1104(b)(2) BASED UPON THE STIPULATED FACT THAT "DEBTOR REVCO D.S., INC. OWED FIXED, LIQUIDATED, UNSECURED DEBTS, OTHER THAN DEBTS FOR GOODS, SERVICES, OR TAXES, OR OWING TO AN INSIDER, IN EXCESS OF $5,000,000 AT THE TIME DEBTORS FILED THEIR VOLUNTARY PETITIONS ON JULY 28, 1988 AND REMAINS SO INDEBTED AT PRESENT"?

## DISCUSSION OF LAW

Title 11 U.S.C. sec. 1104(b)(1) and (2) governs the appointment of an examiner and states:

(b) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if—

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

Although Section 1104(b)(1) was briefly mentioned as a basis for appointment of an examiner in the Motion, the UST has failed to allege or prove any facts to substantiate cause for appointment of an examiner under Section 1104(b)(1). Therefore, the Court will not address this case under Section 1104(b)(1). *In re Gilman Services, Inc.*, 46 B.R. 322 (Bankr.D.Mass.1985) and *In re Lenihan*, 4 B.R. 209 (Bankr.D.R.I. 1980).

While the UST asserts that the language of Section 1104(b)(2) mandates the appointment of an examiner in all cases having in excess of $5,000,000 in fixed, liquidated, unsecured indebtedness other than debts for goods, services, or taxes, or owing to an insider (debt-limit), the courts which have addressed this issue have held that Section 1104(b)(2) is not a mandatory provision.

In *In re Shelter Resources Corp.*, 35 B.R. 304 (Bankr.N.D.Ohio 1983), Judge O'Neill denied a motion to appoint an examiner pursuant to Section 1104(b)(2). The arguments in support of the motion pertained to appointing an examiner to investigate allegations made in a derivative action and review the fairness of any settlement. The court found these arguments moot by reason of a compromise and settlement of the derivative action. The court further found the appointment of an examiner would delay the administration of the estate and cause the debtor to incur unneces-

sary costs detrimental to the interest of the creditors. The court stated at page 305:

> There is currently in place a Debenture Holders' Committee with powers under Section 1103(c) of the Bankruptcy Code to carry on, if necessary, an investigation as may be appropriate. The appointment of an examiner under these circumstances, with the possibility of duplicated effort, is not in the spirit of economy of administration in the handling of bankruptcy estates.

The sole basis for appointment was that debtor's debt exceeded the debt limit provided in Section 1104(b)(2). The court did not find that basis to be persuasive and stated on page 305:

> ... confronted with the facts and circumstances that presently exist in this particular case, to slavishly and blindly follow the so-called mandatory dictates of Section 1104(b)(2) is needless, costly and non-productive and would impose a grave injustice on all parties herein.

In *In re The GHR Companies, Inc.*, 43 B.R. 165 (Bankr.D.Mass.1984), *aff'd*, 792 F.2d 476 (5th Cir.1986) the United States Trustee moved for appointment of an examiner pursuant to Section 151104(b)(2) [1] and the court held that the appointment of an examiner under Section 151104(b)(2) was *not* mandatory. In reaching this determination the court reviewed the relevant legislative history of the Bankruptcy Code and found that while Congress intended to afford some protection to creditors or equity security holders of publicly-held corporations there was no such intent evident for privately-held corporations. At page 175 the court stated:

> The Court is struggling with the meaning of the legislative history because there is no clear expression of why the mandatory examiner section was enacted.

In denying the motion the court also noted that court authorization had been given for numerous investigatory-type functionaries, some of the grounds of the motion would be the subject of future investigations and judicial scrutiny and the debtors had already expended great sums of money for the expenses of professionals employed by various parties in interest. Thus, the court found the appointment of an examiner "... neither prudent nor mandated." *Id.* at p. 176.

The case was appealed and affirmed in *In re GHR Energy Corp.*, 792 F.2d 476 (5th Cir.1986). The circuit court found the bankruptcy court's opinion was not a decision on the merits of the U.S. Trustee's motion. The circuit court stated at page 478:

> In denying the Trustee's motion the Massachusetts courts did not intend to make findings which would control the course of *subsequent* proceedings. It simply forestalled consideration of what it considered to be a "fruitless" request by the Trustee. (emphasis added)

In both *Shelter* and *GHR* the courts recognized that other facts and circumstances, aside from the amount of debt in a case, must be considered before determining whether or not an examiner be appointed under 11 U.S.C. sec. 1104(b)(2). The courts took into consideration whether or not the creditors and equity security holders were represented by committees capable of performing similar investigations and whether or not appointment of an examiner would be appropriate at that particular stage of the chapter 11 proceeding.

The status of a case may preclude the appointment of an examiner under Section 1104(b)(2) even though the debt-limit has been met.

As stated in 5 Collier on Bankruptcy para. 1104.03 at 1104–32 (15th ed. 1988):

> Notwithstanding the language of section 1104(b), in certain cases when the debtor's fixed, liquidated, unsecured debts other than debts for goods, services or taxes, or debts owing to an insider exceed $5,000,000, the court may properly deny a request for the appointment of

---

1. Section 151104(b), which has since been repealed, was applicable on an interim basis in United States Trustee "pilot" districts. The section is identical in all material respects to Section 1104(b) of the Code.

an examiner ... Notwithstanding the mandatory language of section 1104(b)(2), it is submitted that this subsection was not intended to compel the appointment of an examiner at a point in time when an investigation would serve no useful purpose.

The authorities cited above, which have interpreted the word "shall" in Section 1104(b)(2) as *not* mandating the appointment of an examiner when the debt limit exceeds $5,000,000, are consistent with the interpretation of the word "shall" in other sections of the Bankruptcy Code. *See, e.g., In re General Oil Distributors, Inc.,* 42 B.R. 402 (Bankr.E.D.N.Y.1984) (denying motion to appoint trustee despite the usage of the word "shall" in Section 1104(a) of the Bankruptcy Code); *In re Garber,* 4 B.R. 684 (Bankr.C.D.Cal.1980) (debtor's failure to appear at discharge hearing did not preclude discharge, despite Section 524(d) providing that "... the court shall hold a hearing at which the debtor *shall* appear in person."); *In re Stewart,* 14 B.R. 959 (Bankr.N.D.Ohio 1981) (holding that debtor need not appear at the Section 341 meeting although Section 343 provides that "The debtor *shall* appear and submit to examination under oath at the meeting of creditors ...").

Therefore, based upon the authorities previously cited, this Court concludes that 11 U.S.C. sec. 1104(b)(2) does not impose a mandatory duty upon the court to appoint an examiner when the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

In the instant case, the UST has filed a Motion for Appointment of an Examiner to investigate the leveraged buy-out, and the Committee has requested the Court to authorize retention of Touche Ross for the same purpose.

The Debtors have continued in the operation and management of their business as debtors in possession pursuant to 11 U.S.C. sec. 1107 and have retained Arthur Andersen & Co. and Peat Marwick & Main as accountants. The Committee and the Unsecured Noteholders' Committee have both retained separate legal counsel and have jointly retained Ernst & Whinney as accountants.

The parties in interest have received court approval to employ counsel and accountants who are very well qualified to perform any necessary investigations.

■ It is significant to this Court that the timing of this Application and Motion have been filed before the Debtors have had an opportunity to file their schedules and statement of affairs and the meeting of creditors pursuant to Section 341 has not been held. The Court finds that this Application and Motion are premature.

The Debtors are busily engaged in effectuating a merchandise program for the Christmas season and rebuilding confidence with their suppliers so as to obtain merchandise. To appoint an examiner could possibly hinder this endeavor as stated by counsel for the Debtors at the hearing. The Committee and Noteholders' Committee have already retained Ernst & Whinney, a national CPA firm, to aid in the investigation of Debtors' activities. To add a fourth group of professionals would further burden the Debtors with administrative expenses and possibly hinder its merchandise activity at this crucial time.

Therefore, it is the conclusion of this Court based upon the facts submitted at the hearing and the authority cited earlier, that 11 U.S.C. sec. 1104(b)(2) does not impose a mandatory duty upon the Court to appoint an examiner when the Debtors' fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000. And there is insufficient evidence presented by the Committee, at this time, as to what unique contribution Touche Ross can make to the case at this time.

An appointment of an examiner and/or Touche Ross could possibly result in duplication of services and expenses.

The Court concludes that at this early stage of these chapter 11 proceedings it is inappropriate to order the appointment of an examiner and/or Touche Ross as requested by the UST and the Committee.

This Court recognizes that a party in interest can refile a motion to appoint an examiner at a later date.

A separate Order in accordance with these Findings will be issued.